UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
TRECIA LORELLE SIBLEY,

                                        <u>MEMORANDUM & ORDER</u>
                        Plaintiff,      14-CV-0634 (JS)(AYS)

        -against-

CHOICE HOTELS INTERNATIONAL, INC.,
RATAN GROUP HOTEL LIMITED LIABILITY CO.
d/b/a RODEWAY INN, RODEWAY INN LONG ISLAND,
RODEWAY INN HUNTINGTON STATION, and/or
HUNTINGTON COUNTRY INN, XYZ CORPORATIONS
1-50, MAHESH RATANJI a/k/a MAHESH M.
RATANJI a/k/a MAHESHCHAND M. RATANJI,
KHOZEM KHARAWALLA, and/or JANE AND JOHN
DOES 1-10, individually and as owner,
Officer, director, shareholder, founder,
Manager, agent, servant, employee,
Representative, and/or independent
Contractor of RATAN GROUP HOTEL LIMITED
LIABILITY COMPANY d/b/a RODEWAY INN,
RODEWAY INN LONG ISLAND, RODEWAY INN
HUNTINGTON STATION, HUNTINGTON COUNTRY INN,
and/or XYZ CORPORATIONS 1-50,

                        Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:          Brian L. Ponder, Esq.
                        Brian Ponder LLP
                        200 Park Avenue, Suite 1700
                        New York, NY 07666

For Defendants:         Jennifer Borek, Esq.
                        Patrick W. McGovern, Esq.
                        Genova Burns Giantomasi Webster LLC
                        494 Broad Street
                        Newark, NJ 07102


SEYBERT, District Judge:

        Plaintiff Trecia Lorelle Sibley ("Plaintiff") commenced

this diversity action asserting a claim for negligence.  Presently

pending before the District Court are the following applications:

(1) Plaintiff's appeal of Magistrate Judge Anne Y. Shields' Order dated December 22, 2015 (Docket Entry 85); (2) Plaintiff's appeal of Judge Shields' Electronic Order dated February 2, 2016 (Docket Entry 110); (3) Defendants Choice Hotels International Inc. ("Choice Hotels"), Ratan Group Hotel Limited Liability Company d/b/a Rodeway Inn, Rodeway Inn Long Island, Rodeway Inn Huntington Station and/or Huntington Country Inn ("Ratan Group"), Mahesh Ratanji a/k/a Mahesh M. Ratanji a/k/a Maheshchand M. Ratanji ("Ratanji"), and Khozem Kharawala's ("Kharawala" and, collectively, "Defendants") motion for summary judgment (Docket Entry 122); and (4) Plaintiff's letter motion to strike Defendants' motion for summary judgment (Docket Entry 124). For the following reasons, Plaintiff's appeals and motion are DENIED and Defendants' motion is GRANTED.

Preliminarily, the Court notes that Plaintiff filed a Local Rule 56.1 Counterstatement dated August 12, 2016, in conjunction with her opposition to Defendants' motion. (See Docket Entry 125.) The Court's Electronic Order dated June 2, 2016, directed Plaintiff to serve her Rule 56.1 Counterstatement on or before June 17, 2016. Defendants allege that they previously received a Rule 56.1 Counterstatement from Plaintiff dated June 17, 2016. (Defs.' Reply, Docket Entry 130, at 6; Pl.'s 56.1 Counterstmt., Defs.' Reply Ex. A, Docket Entry 130-2.) Plaintiff did not request leave to file an amended Rule 56.1

Counterstatement, nor was leave otherwise granted.  Accordingly,

the Court will not consider Plaintiff's Rule 56.1 Counterstatement

dated August 12, 2016, and will solely rely on Plaintiff's Rule

56.1 Counterstatement dated June 17, 2016.

BACKGROUND

I.  Factual Background[1]

On July 29, 2012, Plaintiff checked into the Huntington

Country Inn, located at 270 West Jericho Turnpike, Huntington

Station, New York (the "Hotel").  (Defs.' 56.1 Stmt. ¶¶ 1-2.)

Plaintiff reserved a room for five nights.  (Defs.' 56.1 Stmt.

¶ 3.)  On July 30, 2012, Plaintiff complained that she had

discovered a bed bug in her room.  (Defs.' 56.1 Stmt. ¶ 4.)

Plaintiff checked out of the Hotel that same day and received a

full refund of all funds remitted for her stay at the Hotel.

(Defs.' 56.1 Stmt. ¶¶ 4-5.)

Defendants allege that the Hotel's owner during the time

period relevant to this litigation was Roslyn Properties Group LLC

("Roslyn Properties"), a limited liability company organized under

New York law.  (Defs.' 56.1 Stmt. ¶¶ 6-7.)  Plaintiff admits that

allegation but avers that Ratanji was "an Optionee in exclusive

---

[1] The following material facts are drawn from Defendants' Local
Civil Rule 56.1 Statement, (Defs.' 56.1 Stmt., Docket Entry
122-1) and Plaintiff's Local Civil Rule 56.1 Counterstatement
dated June 17, 2016.  Any relevant factual disputes are noted.
All internal quotation marks and citations have been omitted.

possession of the Hotel during all time periods relevant to this litigation." (Pl.'s 56.1 Counterstmt. ¶ 6.)  A renewal application for a permit for the 2012 calendar year lists Roslyn Properties as the sole owner of the Hotel and Roslyn Management Group, LLC ("Roslyn Management"), a limited liability company organized under New York law, as the "Legal Operator or Operating Corporation." (Defs.' 56.1 Stmt. ¶¶ 8-10.)  Plaintiff notes that this permit application is a self-prepared document that does not contain the names of all individuals who "controlled, owned, operated, managed, and/or maintained the Hotel on July 29-30, 2012[.]"[2] (Pl.'s 56.1 Counterstmt. ¶ 8.)  It is undisputed that permits for the years 2010 through 2013 were issued to Roslyn Management as operator of the Hotel.  (Defs.' 56.1 Stmt. ¶ 11.)

    A.    The Option Agreement

        In 2009, Roslyn Properties and Roslyn Management entered into an Option and Sale Agreement with "Mahesh Ratanji and/or Bhupendra Ratanji and/or Ratan Huntington LLC" (the "Option Agreement").  (Defs.' 56.1 Stmt. ¶ 13.)  Roslyn Properties and Roslyn Management were designated as "Optionor" and Ratanji, Bhupendra Ratanji ("B. Ratanji"), and/or Ratan Huntington LLC

_____

[2] Paragraph 8 of Plaintiff's 56.1 Counterstatement refers to a permit application prepared on or about October 30, 2015, but cites to the Counterstatement's Exhibit B, which contains a permit application prepared in 2011.  (Pl.'s 56.1 Counterstmt. ¶ 8; Ex. B, at 20-24.)

("Ratan Huntington"), a limited liability company organized under New York Law, were designated as "Optionee." (Defs.' 56.1 Stmt. ¶¶ 13, 41.) Pursuant to the Option Agreement, Ratanji, B. Ratanji, and/or Ratan Huntington possessed the option to purchase the Hotel for $7 million with the option terminating on January 11, 2012. (Defs.' 56.1 Stmt. ¶ 14.) The Optionor represented that it "had good, marketable, fee simple title to the Hotel . . . [and] no person, firm, or other entity had any right or option to acquire the Hotel, or any portion thereof, or any interest therein." (Defs.' 56.1 Stmt. ¶¶ 15-16.)

On April 1, 2012, the Option Agreement was amended to delete Ratanji and B. Ratanji as "Optionee" and "state[ ] that all the rights and obligations contained in the [Option] Agreement vested exclusively with Ratan Huntington LLC as 'Optionee'" (the "Amended Option Agreement"). (Defs.' 56.1 Stmt. ¶¶ 18-19.) The Amended Option Agreement changed the purchase price to $6.685 million and the termination date to January 11, 2017, and "released Ratanji and [B.] Ratanji from their obligations arising out of the Agreement and stated that Ratanji and [B.] Ratanji no longer had any rights under the Agreement." (Defs.' 56.1 Stmt. ¶¶ 20-22.) The Amended Option Agreement further provided that "the parties admit and acknowledge that the Optionee is presently in possession of the property prior to closing." (Defs.' 56.1 Stmt. ¶ 23.) However, Plaintiff avers that while the Amended Option Agreement's

introductory paragraph defines Ratan Huntington as "Optionee," its signature page lists a number of individuals--including but not limited to Ratanji--under the word "Optionee" and Ratanji is listed as a "confirming part[y]." (Pl.'s 56.1 Counterstmt. ¶ 23.) Nevertheless, Plaintiff does not dispute that "[o]nly Ratan Huntington, LLC was an Optionee on July 29, 2012." (Defs.' 56.1 Stmt. ¶ 27; Pl.'s 56.1 Counterstmt. ¶ 27.)

B.    The Employment Agreement

On February 1, 2009, Roslyn Management and Roslyn Properties entered into an employment agreement with Ratanji, B. Ratanji, and/or Ratan Huntington, who were collectively defined as "Employee" (the "Employment Agreement"). (Defs.' 56.1 Stmt. ¶ 28.) The Employment Agreement addressed the time period from February 1, 2009, through January 10, 2012, and charged Ratanji, B. Ratanji, and/or Ratan Huntington "with ensuring the proper and complete management of the Hotel." (Defs.' 56.1 Stmt. ¶¶ 29-30.) On July 8, 2010, the Employment Agreement was amended regarding compensation. (Defs.' 56.1 Stmt. ¶ 31.)

On April 1, 2012, the Employment Agreement was amended to "remove[ ] Ranaji and [B.] Ratanji as parties to the Employment Agreement and vest[ ] all rights and obligations exclusively with Ratan Huntington LLC," (the "Second Amended Employment Agreement"). (Defs.' 56.1 Stmt. ¶¶ 32-33.) Additionally, the Second Amended Employment Agreement extended the terms of the

Employment Agreement to January 11, 2017, defined "Employee" as Ratan Huntington, and "expressly stated that Ratanji and [B.] Ratanji were released from their obligations arising out of the Employment Agreement and that they no longer had any rights under the Agreement."  (Defs.' 56.1 Stmt. ¶¶ 34-36.)  Plaintiff notes that the Second Amended Employment Agreement lists a number of individuals including Ratanji as "Employees" on the signature page and lists Ratanji as a "Confirming Part[y]."  (Pl.'s 56.1 Counterstmt. ¶ 38.)

C.   Franchise Agreement

On May 29, 2013, Roslyn Properties entered into a franchise agreement with Choice Hotels with respect to the Hotel (the "Franchise Agreement").  (Defs.' 56.1 Stmt. ¶ 44.)  The Franchise Agreement ends on May 29, 2033, and grants Roslyn Properties "a non-exclusive, limited, revocable license to use the Choice system and brand to operate the Hotel." (Defs.' 56.1 Stmt. ¶ 45.)  After entering into the Franchise Agreement, Roslyn Properties began operating the Hotel as a Rodeway Inn.  (Defs.' 56.1 Stmt. ¶ 42.)

D.   Sale of the Hotel

On or about March 18, 2014, Roslyn Properties sold the Hotel to Ratan Huntington; that same day, Ratan Huntington entered into a franchise agreement with Choice Hotels.  (Defs.' 56.1 Stmt. ¶¶ 39, 46.)  Plaintiff alleges that the "purported" warranty deed

with respect to this sale of the Hotel does not indicate that the deed was filed with Suffolk County and the notary attestation does not contain a date. (Pl.'s 56.1 Counterstmt. ¶ 39.) A permit renewal application for the 2016 calendar year states that Ratan Huntington is the sole owner and operator of the Hotel. (Defs.' 56.1 Stmt. ¶ 40.) Plaintiff states that the permit application is a self-prepared document. (Pl.'s 56.1 Counterstmt. ¶ 40.)

### E. Ratan Group

Defendants allege that "Ratan [Group] has no legal connection to Roslyn Properties Group LLC, Roslyn Management Group LLC, or Ratan Huntington LLC," as these entities are separate and legally distinct. (Defs.' 56.1 Stmt. ¶ 50.) Plaintiff admits that Roslyn Properties, Roslyn Management, and Ratan Huntington are "separate and distinct legal entities," but avers that Ratan Group is legally connected to Roslyn Properties, Roslyn Management, and Ratan Huntington "by contract and ownership interest(s)." (Pl.'s 56.1 Counterstmt. ¶ 50.)

### F. Kharawala

Kharawala serves as the Managing Director/Vice President of iConnect Hospitality ("iConnect"), a hotel and hospitality industry consulting company, and has been employed by iConnect since in or about 2011. (Defs.' 56.1 Stmt. ¶ 51.) Defendants allege that "Kharawala has never owned, operated or managed the Hotel." (Defs.' 56.1 Stmt. ¶ 52.) Plaintiff alleges that

Kharawalla "[s]erved as VP--Operations & Sales/Marketing for Ratan Hotel Group based in US for over 50 plus hotels" including the Hotel. (Pl.'s 56.1 Counterstmt. ¶ 53.) The parties dispute whether Kharawalla has ever been a member of or employed by Roslyn Properties, Roslyn Management, or Ratan Huntington. (Defs.' 56.1 Stmt. ¶ 54; Pl.'s 56.1 Counterstmt. ¶ 54.)

In July 2012, Kharawala performed consulting work for limited liability corporations of which Ratanji was a member. (Defs.' 56.1 Stmt. ¶ 56.) These corporations paid iConnect for Kharawala's services, which included marketing and preparing websites for hotels. (Defs.' 56.1 Stmt. ¶ 57.) Kharawala assisted with the Hotel's website. (Defs.' 56.1 Stmt. ¶ 58.)

G.   <u>Ratanji</u>

Defendants allege that Ratanji has never personally owned the Hotel and has never been personally involved with the Hotel's day-to-day management and operation. (Defs.' 56.1 Stmt. ¶¶ 60-61; Pl.'s 56.1 Counterstmt. ¶¶ 60-61.) It is undisputed that Ratanji was not physically present at the Hotel on July 30, 2012. (Defs.' 56.1 Stmt. ¶ 62.) Defendants allege that Ratanji was never a member of Roslyn Management or Roslyn Properties. (Defs.' 56.1 Stmt. ¶ 65.) Plaintiff alleges Ratanji's Certification does not indicate whether he was ever a member in these entities. (Pl.'s 56.1 Counterstmt. ¶ 65.)

II.   Pending Motions

   A.   Appeal of Judge Shields' December 2015 Order

      On October 21, 2015, Plaintiff filed a motion to compel, arguing that Defendants failed to: (1) "fully comply" with  the initial disclosure requirements set forth in Federal Rule of Civil Procedure 26, (2) respond to interrogatories and requests for production, and (3) "properly answer Plaintiff's requests for admission under Rule 36" ("Plaintiff's Motion to Compel"). (Pl.'s Oct. Mot., Docket Entry 78; Pl.'s Oct. Br., Docket Entry 80, at 2.)  Plaintiff requested that sanctions be imposed for Defendants' non-compliance.  (Pl.'s Oct. Br. at 20-23.)

      Particularly, Plaintiff alleged that Defendants' Rule 26 disclosure regarding "'any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment'" stated that no such insurance agreement existed; however, Defendants referenced an insurance policy in response to Plaintiff's request for documents. (Pl.'s Oct. Br. at 13.)  Additionally, Plaintiff listed several interrogatories and requests for document production that Defendants allegedly failed to respond to.  (Pl.'s Oct. Br. at 14-16.)  Similarly, Plaintiff argued that certain of Defendants' disclosures and/or responses were improper or incomplete.  (Pl.'s Oct. Br. at 17-20.)  On November 30, 2015, Plaintiff filed a letter

motion requesting an extension of discovery ("Plaintiff's Request for Extension").  (Pl.'s Nov. Mot., Docket Entry 83.)

On December 22, 2015, Judge Shields denied Plaintiff's Motion to Compel and Request for Extension (the "December Order"). (Dec. Order, Docket Entry 84.)  Judge Shields held that Defendants' Rule 26 disclosures were not inconsistent with their subsequent production of an insurance contract, as Defendants took the position that they did not own the Hotel during the relevant time frame, and Plaintiff's document request addressed a broader demand for "'a copy of any and all insurance contracts to which you are a party.'"  (Dec. Order at 7-8.)  Judge Shields further held that Plaintiff failed to indicate why Defendants' interrogatory responses were insufficient and noted that "Plaintiff's request far exceeds the number of permissible interrogatories allowed to be propounded."[3]  (Dec. Order at 8-10.)

Judge Shields found that Defendants' responses to Plaintiff's document requests were "clear and sufficient" and noted that Plaintiff failed to support her argument that "'Defendants improperly claim privilege to at least one of Plaintiff's requests.'"  (Dec. Order at 12 (quoting Pl.'s Oct. Br.

---

[3] With respect to the one specific interrogatory response Plaintiff identified as insufficient, Judge Shields held that Defendants' response was adequate and the information sought in Plaintiff's request exceeded the scope of discovery.  (Dec. Order at 8-9.)

at 15-16).)  Judge Shields rejected Plaintiff's argument that Defendants' responses to her Requests for Admission were "evasive or incomplete," holding both that Plaintiff failed to support that assertion and that Plaintiff's requests to admit were "completely ill-suited and disproportional to the needs of discovery in this matter."  (Dec. Order at 13-14.)  Finally, Judge Shields denied Plaintiff's request to extend discovery.  (Dec. Order at 16.)

On December 22, 2015, Plaintiff filed an appeal of the December Order.  (Pl.'s First App., Docket Entry 85.)

B.   Appeal of Judge Shields' February 2016 Order

On January 26, 2016, Plaintiff filed a "Motion to strike Second Amended Answer, enter default judgment, and for attorneys fees and costs," ("Plaintiff's January Motion").  (Pl.'s Jan. Motion, Docket Entry 101, at 1.)  Plaintiff's memorandum of law in support of her January Motion states, in relevant part, that: "[t]he issue is whether Fed. R. Civ. P. 37(d) permits this Court to strike the Second Amended Answer [60], render default judgment, and order payment of reasonable expenses, including attorney's fees, against Defendant CHOICE HOTELS INTERNATIONAL, INC. for willfully failing to appear for its oral deposition on January 26, 2016, after being served with proper notice."  (Pl.'s Jan. Br., Docket Entry 103, at 1.)

On February 2, 2016, Judge Shields denied Plaintiff's January Motion without prejudice by Electronic Order (the "Electronic Order"). Judge Shields' Electronic Order states:

> The motion submitted under docket entry 101 is denied without prejudice. The motion was not filed correctly, as it should have been filed as a motion for sanctions under Fed. R. Civ. P. 37. Moreover, Plaintiff failed to comply with Judge Shields' Rules, which require a pre-motion conference prior to filing a motion.

On February 2, 2016, Plaintiff filed an appeal of Judge Shields' Electronic Order and argued that the January Motion was dispositive and should have been determined by this Court, which does not require a pre-motion conference for Plaintiff's motion. (Pl.'s Sec. App., Docket Entry 110, at 1.) Plaintiff requests that this Court conduct a de novo review of Judge Shields' Electronic Order and determine her January Motion. (Pl.'s Sec. App. at 1.)

C.    Motion for Summary Judgment

On July 8, 2016, Defendants filed their motion for summary judgment. (Defs.' Mot., Docket Entry 122.) Defendants principally argue that they were not the owners and/or managers of the Hotel at the time of Plaintiff's stay. (Defs.' Br., Docket Entry 122-6, at 12-15.) Defendants allege that documentary evidence establishes that in 2012, the Hotel was owned by Roslyn Properties and operated by Roslyn Management, and Choice Hotels

did not enter into the Franchise Agreement with Roslyn Properties until 2013. (Defs.' Br. at 13-14.) Additionally, Defendants argue that even if Ratan Huntington was a manager of the Hotel during 2012, Ratanji is not liable for the acts of a limited liability company of which he is a member. (Defs.' Br. at 17-18.) Defendants allege that Plaintiff's continued litigation of this action and refusal to name Roslyn Properties or Roslyn Management as defendants evidences an improper attempt to manufacture diversity and maintain federal jurisdiction. (Defs.' Br. at 20-21.)

Plaintiff argues that "evidence shows that Defendants were in exclusive possession of the subject Hotel." (Pl.'s Br., Docket Entry 127, at 1.) Plaintiff avers that Kharawalla admitted to marketing the Hotel and did not deny operating it, and Ratanji "has submitted an affidavit admitting that he owns and manages hotels and is a member of limited liability companies that do the same, including the subject Hotel." (Pl.'s Br. at 3.) Plaintiff argues that the record does not foreclose the possibility that Defendants owned, operated, or managed the Hotel, and requests permission to conduct additional discovery regarding the members of Roslyn Properties and Roslyn Management and their employment agreements with Defendants. (Pl.'s Br. at 3.)

Defendants counter that Plaintiff is not entitled to additional discovery, as Judge Shields' December 2015 Order deemed all document and written discovery closed. (Defs.' Reply Br.,

Docket Entry 130, at 7; Dec. Order at 15.)  Defendants note that
in her December Order, Judge Shields referenced their "'long-
standing position that they cannot be responsible because they did
not own the Hotel at the time of Plaintiff's stay,'" as well as
Plaintiff's opposition to amending her Complaint due to concerns
regarding the "'destruction of diversity.'"  (Defs.' Reply Br. at
7 (quoting Dec. Order at 15).)

     D.   Motion to Strike

       On July 21, 2016, Plaintiff filed a letter motion to
strike Defendants' motion for summary judgment based on their
failure to strictly comply with the Court's Individual Rules.
(Pl.'s Mot. to Strike, Docket Entry 124.)  Plaintiff argues that
Defendants filed multiple exhibit documents within a single docket
entry in contravention of Individual Rule II.C.  (Pl.'s Mot. to
Strike at 1.)  Plaintiff requests that Defendants refile their
motion for summary judgment and that the Court strike Defendants'
exhibits.  (Pl.'s Mot. to Strike at 1.)

DISCUSSION

I.  Plaintiff's Appeals of Judge Shields' Decisions

       "[W]hen a magistrate judge rules on a non-dispositive
matter, '[t]he district judge in the case must consider timely
objections and modify or set aside any part of the order that is
clearly erroneous or contrary to law.'"  Bachayeva v. Americare
Certified Special Servs., Inc., No. 12-CV-1466, 2013 WL 4495672,

at *1 (E.D.N.Y. Aug. 20, 2013) (quoting FED. R. CIV. P. 72(a)). See also Moore v. Kingsbrook Jewish Med. Ctr., No. 11-CV-3552, 2012 WL 1078000, at *5 (E.D.N.Y. Mar. 30, 2012) ("[a] magistrate judge's pretrial discovery rulings are generally considered non-dispositive and are reviewed under the 'clearly erroneous or contrary to law' standard of review"). A magistrate decision is clearly erroneous when "the court is, upon review of the entire record, [ ] left with the definite and firm conviction that a mistake has been committed." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339–40 (S.D.N.Y. 2009) (internal quotation marks and citation omitted; alteration in original). However, a party seeking to overturn a magistrate judge's discovery determination bears a "heavy burden" in light of the broad discretion afforded magistrate judges with respect to the resolution of discovery disputes. Moore, 2012 WL 1078000, at *5 (internal quotation marks and citation omitted). See Bachayeva, 2013 WL 4495672, at *1 (a "magistrate judge's findings should not be rejected merely because the court would have decided the matter differently") (internal quotation marks and citation omitted).

A.    Appeal of December 2015 Order

The Court has reviewed Judge Shields' December Order and finds that it is not "clearly erroneous or contrary to law." See FED. R. CIV. P. 72(a). Plaintiff's appeal largely consists of a repetition of her prior arguments along with the general assertion

that Judge Shields' findings are "clearly erroneous and/or contrary to the law and federal procedural rules." (See generally Pl.'s First. App.) In any event, the Court finds no error in Judge Shields' determination. First, there is no inconsistency between Defendants' failure to reference an insurance policy in their Rule 26 disclosures and their production of an insurance agreement in response to Plaintiff's request for production. (See Pl.'s First. App. at 1.) As addressed more fully below, Defendants have taken the position that they do not own the Hotel; thus, it is logical that they have also taken the complementary position that they do not possess an insurance policy that would render the insurer liable to satisfy a judgment in this action or indemnify or reimburse payments made to satisfy a judgment. Defendants' failure to reference such an agreement in their Rule 26 disclosures is not inconsistent with the production of an insurance agreement in response to the broader request to produce any insurance policy to which Defendants are a party.

Second, while Plaintiff argues that Defendants' alleged deficiencies with respect to interrogatory and document request responses were "too voluminous to list," (Pl.'s First App. at 2), the Court concurs with Judge Shields that Plaintiff's failure to specifically explain what made Defendants' responses inadequate renders her motion defective. Moreover, while Plaintiff argues that Defendants "claimed privilege to some requests, but did not

comply with [Rule] 26(b)(5)," (Pl.'s First App. at 2), she once again fails to indicate the specific privilege claims that are allegedly inappropriate.

Third, the Court has reviewed Defendants' responses to her requests for admission and finds that they comply with the Federal Rules. The Court is not persuaded by Plaintiff's argument that "Defendants fail to assert that they made a reasonable inquiry into the subject matter," and Plaintiff again fails to provide any specificity to her argument that Defendants' responses are somehow "evasive[ ] and incomplete[ ]." (Pl.'s First. App. at 3.) Parenthetically, Defendants allege that they amended their responses to Plaintiff's requests for admission to state that "their responses were provided after reasonable inquiry was made." (Def.'s Resp., Docket Entry 87, at 5; see also Choice Ltr., Docket Entry 80-15 at 10-19; Defs.' Ltr., Docket Entry 80-16 at 11-19.)

Finally, the Court finds that Judge Shields did not err in denying Plaintiff's request for an extension of discovery, (Pl.'s First App. at 4), in light of the absence of any merit to Plaintiff's argument that Defendants failed to adequately respond to her discovery demands. Accordingly, Plaintiff's objections to Judge Shields' December 2015 Order are OVERRULED and her appeal is DENIED.

B. <u>Appeal of February 2016 Electronic Order</u>

The Court finds that Plaintiff's appeal of Judge Shields' Electronic Order is similarly meritless. Although Plaintiff seeks to label her January Motion as a motion for default judgment, Judge Shields properly construed Plaintiff's application as a motion for sanctions pursuant to Rule 37. Plaintiff's January Motion expressly requests sanctions pursuant to Rule 37(d) in connection with Choice Hotel's alleged failure to appear for a deposition. (Pl.'s Jan. Br. at 1.) Plaintiff's request for the entry of a default judgment <u>as a sanction</u> does not transform her sanctions motion into a motion for default judgment. Thus, Judge Shields properly dismissed Plaintiff's motion without prejudice in light of her failure to comply with Judge Shields' Individual Rules, which require a pre-motion conference prior to filing a discovery motion. <u>See</u> Individual Rules of Judge Shields, Section VI., C; Section IX, C. Accordingly, Plaintiff's objections to the Electronic Order are OVERRULED and her appeal is DENIED.

II. <u>Motion to Strike</u>

As set forth above, Plaintiff argues that Defendants failed to comply with this Court's Individual Rules by filing multiple exhibit documents within a single docket entry. (Pl.'s Mot. to Strike, at 1.) Plaintiff is correct that Defendants' filing fails to comply with Individual Rule II(C), which provides that "[a]ll documents filed on ECF in support of motions shall be

labeled and filed as separate entries within the same docket number." Nevertheless, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." M.V.B. Collision, Inc. v. Allstate Ins. Co., 728 F. Supp. 2d 205, 209 (E.D.N.Y. Jul. 27, 2010) (internal quotation marks and citations omitted). Rather than striking Defendants' exhibits and directing Defendants to refile their motion, as suggested by Plaintiff, the Court will exercise its broad discretion to overlook Defendants' non-compliance. Accordingly, Plaintiff's motion to strike is DENIED.

III. <u>Motion for Summary Judgment</u>[4]

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed 2d 202 (1986). In determining whether an award of summary judgment is appropriate, the Court considers the pleadings, deposition testimony,

---

[4] On August 13, 2016, Plaintiff filed a request for oral argument, alleging that Defendants' motion for summary judgment "presents extraordinary circumstances." (Docket Entry 128.) The Court disagrees and finds that, as set forth <u>infra</u>, given the clear absence of any issues of fact, oral argument is not necessary.

interrogatory responses, and admissions on file, together with other firsthand information that includes but is not limited to affidavits. Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011); see also FED. R. CIV. P. 56(c).

The movant bears the burden of establishing that there are no genuine issues of material fact. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." Giglio v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted). Conclusory allegations or denials will not defeat summary judgment. Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). See also Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (a motion for summary judgment will not be defeated based "merely upon a 'metaphysical doubt concerning the facts' or on the basis of conjecture") (internal citations omitted). However, in reviewing the summary judgment record, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).

Pursuant to New York law, the plaintiff must establish the following elements to recover on a negligence claim: "'(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" Long Beach Road Holdings, LLC v. Foremost Ins. Co., 75 F. Supp. 3d 575, 588 (E.D.N.Y. 2015) (quoting Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 428 (2d Cir. 2013)). The defendant is not liable for negligence in the absence of a duty, rendering "[t]he existence of a duty [ ] an essential element of a negligence claim[.]" Long Beach Road Holdings, 75 F. Supp. 3d at 588 (internal quotation marks and citations omitted). Additionally, the existence of the defendant's duty "is, in the first instance, a legal issue for the Court to resolve." Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000) (internal quotation marks and citations omitted).

As set forth above, the crux of Defendants' motion is their argument that they were not the owners and/or managers of the Hotel at the time of Plaintiff's stay. (See generally Defs.' Br. at 12-14.) The Court will address Plaintiff's claims against each Defendant in turn.

A. Ratan Group and Choice Hotels

Defendants have proffered documentary evidence establishing that when Plaintiff stayed at the Hotel in 2012, it was owned by Roslyn Properties and operated by Roslyn Management.

Defendants have submitted a Permit to Operate Renewal Application filed in 2011 (the "Permit Application") that reflects that the owner of the Hotel was Roslyn Properties and the "legal operator or operating corporation" was Roslyn Management. (Permit Appl., Defs.' Mot. Ex. 5, Docket Entry 122-3, at 35-40.) The Permit Application indicates that a permit was issued with an effective date of January 1, 2012, and an expiration date of December 31, 2012. (Permit Appl. at 37.) Defendants have also submitted permits to operate a temporary residence issued by the Suffolk County Department of Health Services to Roslyn Management for the years 2010, 2011, 2012, and 2013. (Defs.' Mot., Exs. 8-11, Docket Entry 122-3, at 47-54.) While Plaintiff's Rule 56.1 Counterstatement asserts that the Permit Application is a self-prepared document, (Pl.'s 56.1 Counterstmt. ¶ 8), the record does not contain any evidence to refute the Permit Application, and Plaintiff admits that Roslyn Properties was the owner of the Hotel in 2012. (Defs.' 56.1 Stmt. ¶ 6; Pl.'s 56.1 Counterstmt. ¶ 6.) Parenthetically, Defendants have also submitted a Warranty Deed dated March 18, 2014, in which Roslyn Properties conveys title to Ratan Huntington (the "Deed"). (Deed, Defs.' Mot. Ex. 18, Docket Entry 122-3, at 90-94.) The Deed states that the premises were previously conveyed to Roslyn Properties pursuant to a deed dated January 10, 2007. (Deed at 91.)

It is also worthy of note that the record does not contain any evidence establishing that Choice Hotels or Ratan Group owned, operated, or managed the Hotel during 2012. Indeed, Roslyn Properties did not enter into the Franchise Agreement with Choice Hotels until May 29, 2013. (Defs.' 56.1 Stmt. ¶ 44; Franchise Agmt., Defs.' Mot. Ex. 24, Docket Entry 122-4, at 72-104.) Moreover, while Plaintiff asserts that Ratan Group "has legal connections by contract and ownership interest(s) to Roslyn Properties Group LLC, Roslyn Management Group LLC, and Ratan Huntington LLC," (Pl.'s 56.1 Counterstmt. ¶ 50), she has not proffered any evidence establishing a "legal connection[ ]" between these entities.

In the absence of any evidence establishing Choice Hotels and/or Ratan Group's ownership or management of the Hotel during the relevant time period, the Court finds that these entities did not owe Plaintiff a duty.

B.   Ratanji

Ratanji asserts that he was never a member of Roslyn Management or Roslyn Properties, and he "was never personally involved with the day-to-day management and/or operation of the Hotel." (Ratanji Aff., Defs.' Mot. Ex. 27, Docket Entry 122-5, at 4-6, ¶¶ 7-8, 10.)  With respect to management of the Hotel, the Employment Agreement provides that Ratanji, along with B. Ratanji and/or Ratan Huntington, "ensure proper and complete management of

[the Hotel]" beginning on February 1, 2009, and terminating on or before January 10, 2012. (Emp't Agmt., Defs.' Ex. 15, Docket Entry 122-3, at 75.) On April 1, 2012, the Employment Agreement was amended to, _inter alia_, delete Ratanji's name, and provided that "[a]ll the rights and obligations contained in the Employment Agreement shall now vest exclusively with Ratan Huntington LLC." (Sec. Amended Emp't Agmt., Defs.' Mot. Ex. 17, Docket Entry 122-3, 83-89, at 84-85.) Plaintiff has failed to adduce any evidence raising issues of fact as to whether Ratanji served as a manager or was otherwise involved in operating the Hotel during July 2012.[5]

Defendants argue that while Ratanji possessed an option to buy the Hotel pursuant to the Option Agreement, the Amended Option Agreement "released him from any obligations or rights under the [Option] Agreement prior to July 29, 2012." (Defs.' Br. at 16.) The Court agrees. Pursuant to the Option Agreement, Ratanji, B. Ratanji, and Ratan Huntington entered into an option to purchase the Hotel that expired on January 11, 2012. (Defs.' Mot. Ex. 12, Docket Entry 122-3, at 55-62, at 56.) However, the Second Amendment to the Option Agreement dated April 1, 2012, removed

---

[5] Contrary to Plaintiff's assertion, the fact that Ratanji signed the Second Amended Employment Agreement both as a member of Ratan Huntington and a "confirming party," (Pl.'s Counterstmt. ¶ 33), is of little relevance and does not undercut the Second Amended Employment Agreement's provision vesting all rights and obligations under the prior Option Agreement with Ratan Huntington. (Defs.' 56.1 Stmt. ¶ 33).

Ratanji as an optionee and provided that "[a]ll the rights and obligations contained in the Option Agreement shall now vest exclusively with Ratan Huntington LLC." (Am. Option Agmt., Defs.' Mot. Ex. 14, Docket Entry 122-3, at 65-73.) The record does not contain any evidence indicating that Ratanji possessed an option to buy the Hotel after April 1, 2012.[6]

Pursuant to the Amended Option Agreement, Ratan Huntington had an option to buy the Hotel through January 11, 2017, and Ratan Huntington was in "possession of the property" at the time the agreement was signed. (Am. Option Agmt. at 67-68.) While Ratanji was undisputedly a member of Ratan Huntington in 2012, Plaintiff has not raised issues of fact as to whether the corporate veil should be pierced to hold Ratanji liable for Ratan Huntington's obligations.

"A member of a limited liability company cannot be held liable for the company's obligations by virtue of his [or her] status as a member thereof." Bd. of Managers of Beacon Tower Condominum v. 85 Adams St., LLC, 136 A.D.3d 680, 682, 25 N.Y.S.3d 233, 237 (2d Dep't 2016) (internal quotation marks and citation omitted; alteration in original). However, a member of a limited

---

[6] The fact that Ratanji signed the Amended Option Agreement as a member of Ratan Huntington and a "confirming party," (Pl.'s 56.1 Counterstmt. ¶ 23), does not raise issues of fact as to whether Ratanji was an optionee subsequent to the execution of the Amended Option Agreement.

liability company may be held individually liable for "the commission of a tort in furtherance of company business." Id. (internal quotation marks and citation omitted). Additionally, a member of a limited liability company may be subject to individual liability pursuant to the doctrine of piercing the corporate veil, which requires that "the shareholder exercised complete domination and control over the corporation [or LLC] and abused the privilege of doing business in the corporate [or LLC] form to perpetrate a wrong or injustice." Id. (internal quotation marks and citation omitted; alteration in original). The Court considers "failure to adhere to LLC formalities, inadequate capitalization, commingling of assets, and the personal use of LLC funds," in determining whether the defendant "abused the privilege of doing business in the corporate or LLC form." Grammas v. Lockwood Assoc., LLC, 95 A.D.3d 1073, 1075, 944 N.Y.S.2d 623, 626 (2d Dep't 2012). The record does not contain any evidence regarding Ratanji's commission of torts in furtherance of company business or abuse of the privilege of doing business in the limited liability company form, nor does Plaintiff offer so much as an allegation on this issue. Accordingly, Ratanji did not owe Plaintiff a duty.

C. Kharawalla

Kharawalla has submitted an Affidavit in which he testifies that he has never been a member or employee of Roslyn

Properties, Roslyn Management, or Ratan Huntington. (Kharawalla Aff., Defs.' Mot. Ex. 26, Docket Entry 122-5, ¶¶ 4-5.) Kharawalla also alleges that during July 2012, he worked for iConnect and performed consulting work for "various LLC's of which Mahesh Ratanji was a member." (Kharawalla Aff. ¶ 6.) Kharawalla avers that he assisted with the marketing of the Hotel but was never an owner or manager of the Hotel, was never "personally involved with any day-to-day management or operation of the Hotel",[7] and did not visit the Hotel. (Kharawalla Aff. ¶¶ 8-12.)

Plaintiff's sole support for the notion that Kharawalla was an owner, operator, manager, or otherwise "in possession" of the Hotel during 2012 is an iConnect brochure stating that Kharawalla "[s]erved as VP—Operation & Sales/Marketing for Ratan Hotel Group based in US for over 50 plus hotels," (the "Brochure"). (Brochure, Pl.'s Decl. Ex. A, Docket Entry 126-1, at 1.) The Brochure, which confirms that iConnect is a company providing "Hospitality Management and Marketing Services," does not include the Hotel on its list of "Management Credentials." (Brochure at 2.) The Brochure does not indicate when Kharawalla served as VP—Operation & Sales/Marketing for the "Ratan Hotel Group" or indicate

_____

[7] Plaintiff's puzzling allegation that Kharawalla "does not deny operating [the Hotel]" in his Affidavit is belied by Kharawalla's previously noted assertion that he was not involved in the day-to-day operation of the Hotel. (Kharawalla Aff. ¶¶ 8-12.)

what entity or entities own or comprise the "Ratan Hotel Group." This document utterly fails to raise any issues of fact as to Kharawalla's involvement in the Hotel outside of the consulting services provided by iConnect. Thus, the Court finds that Kharawalla did not owe Plaintiff a duty.

D.  Plaintiff's Request for Additional Discovery

Plaintiff requests the opportunity "to conduct additional discovery, and more specifically to subpoena documents from Roslyn Properties Group LLC and Roslyn Management Group LLC regarding its members and employment agreements with respect to Defendants." (Pl.'s Br. at 3.) However, as previously noted, Judge Shields deemed document and written discovery closed in her December Order. (Dec. Order at 16.) Plaintiff failed to make an application to continue discovery prior to Judge Shields' Order or during the several months between Judge Shields' Order and the filing of Defendants' motion. Now, in an apparent "last ditch" attempt to continue this case, Plaintiff requests the opportunity to subpoena non-parties that she has decided not to name as defendants due to apparent fears of a potential "'destruction of diversity.'" (Dec. Order at 16.) The Court declines to permit such a fishing expedition and DENIES Plaintiff's request for additional discovery.

Accordingly, Defendants' motion for summary judgment is GRANTED in light of the Court's determination that Defendants did not owe her a duty.

## CONCLUSION

For the foregoing reasons, Plaintiff's objections to Judge Shields' Order dated December 22, 2015, and Electronic Order dated February 2, 2016, are OVERRULED and her appeals (Docket Entries 85 and 110) are DENIED. Plaintiff's letter motion to strike (Docket Entry 124) is DENIED. Defendants' motion for summary judgment (Docket Entry 122) is GRANTED and Plaintiff's claim is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    January __13__, 2017
          Central Islip, New York